In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3255

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN MCLAUGHLIN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-CR-01013-1 — **Ronald A. Gúzman**, *Judge.*

ARGUED SEPTEMBER 16, 2013 — DECIDED JULY 29, 2014

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* John McLaughlin pled guilty to one
count of transporting child pornography, in violation of 18
U.S.C. § 2252A(a)(1). He was sentenced to 130 months' impris-
onment, a fine of $50,000, and 20 years of supervised release.
He challenges his sentence in several respects. We affirm.

## I.

Sometime prior to June 2009, John McLaughlin began visiting an internet chat room where participants viewed and shared child pornography. Through his activity on the internet, McLaughlin accumulated a large collection of child pornography that included photographs of adults sexually abusing pubescent and prepubescent minors, children engaged in sexual acts with animals, and children engaged in sexual acts with other children. A December 2009 search warrant of McLaughlin's home resulted in a seizure of his computer, an external hard drive and several dozen DVDs, collectively containing more than 150 videos and more than 500 photographs of child pornography.

McLaughlin was charged with four counts of transporting child pornography, in violation of 18 U.S.C. § 2252A(a)(1); and one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(5)(B). The government also sought the forfeiture of McLaughlin's computer tower, external hard drive and DVDs, pursuant to 18 U.S.C. § 2253. McLaughlin pled guilty to one count of transporting child pornography and agreed to the forfeiture. In the Presentence Investigation Report ("PSR"), a probation officer determined that the guidelines range was 151 to 188 months' imprisonment, based on a total offense level of 34 and a criminal history category of I. The PSR set forth a base offense level of 22, pursuant to section 2G2.2(a)(2) of the guidelines. To that base offense level, the PSR added: (1) two levels under section 2G2.2(b)(2) because the material involved prepubescent minors and minors who had not yet attained the age of twelve years; (2) two levels under section 2G2.2(b)(3)(F) because the offense involved distribution of the material;

(3) four levels because the "offense involved material that portrays sadistic or masochistic conduct or other depictions of violence," pursuant to section 2G2.2(b)(4); (4) two levels under section 2G2.2(b)(6) for the use of a computer for the transmission of the material; and (5) five levels under section 2G2.2(b)(7)(D), because the offense involved more than 600 images. The PSR also afforded a three-level reduction for acceptance of responsibility under section 3E1.1.

Finally, the PSR contained an extensive analysis of McLaughlin's finances, calculating a net worth of more than $135,000 in cash, annuities and retirement accounts.[1] The PSR concluded that McLaughlin possessed "the financial ability to make an immediate payment towards restitution and/or a fine." R. 64, at 18. The PSR also noted that the statutory maximum for a fine was $250,000 pursuant to 18 U.S.C. § 3571, and that the guidelines range was $17,500 to $175,000. The PSR indicated that the court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine," citing guidelines section 5E1.2(a). The PSR listed some of the factors that the court should consider in determining the amount of a fine, including the cost of confinement, probation and supervised release. *See* U.S.S.G. § 5E1.2(d). The PSR included the most recent monthly costs for imprisonment, community confinement and supervision as set forth by the Administrative Office of the United States Courts. R. 64, at 20.

---

[1] Excluding retirement accounts, McLaughlin had a net worth of approximately $120,000.

In the district court, McLaughlin objected to the four-level enhancement under section 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other depictions of violence. He also contended that the guidelines for child pornography offenses are generally arbitrary and capricious, that many courts have recognized that section 2G2.2 is flawed, and that these courts often sentence defendants significantly below the guidelines range because of these flaws. He maintained that he would be unusually susceptible to abuse by other inmates because of the nature of his conviction, and he urged the court to adjust his sentence downward on that basis as well. He argued that the statutory minimum of sixty months was adequate to address the seriousness of his offense as a viewer rather than a producer of child pornography. He opposed an award of restitution for the identified victims of the crime, contending that there was no evidence that he had proximately caused harm to the individuals portrayed in the pornography he possessed. But he was silent on the issue of a fine. Finally, at his sentencing hearing, he also objected to the government's reliance on the "market thesis" as lacking any basis in fact. He described the market thesis as the theory that mere consumers of child pornography create a demand for the production of child pornography. He argued that there was no empirical evidence to support this theory and that producers of child pornography committed very different crimes than mere consumers. Producers, he maintained, were not influenced by consumers to make more child pornography but would commit their crimes of abusing children whether or not others wished to purchase or view child pornography.

The district court adopted the PSR, and agreed that the total offense level was 34, resulting in a guidelines range of 151 to 188 months' imprisonment. In fashioning a sentence, the court differentiated between producers of child pornography and consumers such as the defendant, acknowledging the great pain caused to the victims by producers. The court explained the factors that it considered in determining the sentence and announced a below-guidelines sentence of 130 months' imprisonment. After noting that the government had not sought restitution, the court found that "the defendant has the funds and sufficient ability to pay a fine, and the Court will impose a fine of $50,000 in this case, due immediately." R. 61, at 37. McLaughlin appeals.

## II.

On appeal, McLaughlin objects to the four-level enhancement under section 2G2.2(b)(4) for "material that portrays sadistic or masochistic conduct or other depictions of violence." He also complains that his sentence was based on speculation and unfounded allegations, that the district court failed to address his argument regarding his unusual susceptibility to abuse in prison, and that the court failed to articulate its reasons for imposing a $50,000 fine. He also challenges the substantive reasonableness of his sentence on two grounds. Our review of sentencing decisions is limited to whether they are reasonable, applying the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Anobah*, 734 F.3d 733, 736 (7th Cir. 2013); *United States v. Aslan*, 644 F.3d 526, 531 (7th Cir. 2011). We first must ensure that the district court committed no significant procedural error. *Gall*, 552 U.S. at 51. Procedural errors include, among other things, incor-

rectly calculating the guidelines range, or failing to explain adequately the chosen sentence. *Gall*, 552 U.S. at 51; *Anobah*, 734 F.3d at 736. We review the district court's interpretation of the sentencing guidelines *de novo*. *Aslan*, 644 F.3d at 531; *United States v. Veazey*, 491 F.3d 700, 706 (7th Cir. 2007). We review the district court's findings of fact for clear error. *United States v. Knox*, 624 F.3d 865, 870 (7th Cir. 2010). Sentences that are within the properly calculated guidelines range are entitled to a rebuttable presumption of reasonableness. *Rita v. United States*, 551 U.S. 338, 341–49 (2007); *Anobah*, 734 F.3d at 736; *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).

## A.

We begin with the four-level enhancement for material portraying sadistic or masochistic conduct or other depictions of violence. McLaughlin contends that the district court's application of section 2G2.2(b)(4) amounted to double-counting because that enhancement was based solely on the age of the victims, which had already been taken into account by section 2G2.2(b)(2). He acknowledges that sexual penetration of a prepubescent child by an adult qualifies as violence under section 2G2.2(b)(4) but contends that only one of the enhancements could be applied because both subsections address the same harm. His objection fails on multiple levels.

First, as McLaughlin concedes, images portraying sexual penetration of a minor by an adult would alone qualify for the section 2G2.2(b)(4) enhancement. *See United States v. Myers*, 355 F.3d 1040, 1043–44 (7th Cir. 2004) (holding that sexual penetration of a minor by an adult would necessarily cause pain and therefore qualify for the section 2G2.2(b)(4) sadism and

violence enhancement, and collecting cases from other circuits). Images fitting that description were among those found in the materials seized from McLaughlin. Second, "double counting is generally permissible unless the text of the guidelines expressly prohibits it." *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012). There is no such prohibition in section 2G2.2. And we have repeatedly upheld sentences that contained enhancements under both 2G2.2(b)(2) and 2G2.2(b)(4), albeit in cases where the defendant had not specifically raised a double-counting objection. *See United States v. Meschino*, 643 F.3d 1025, 1028 (7th Cir. 2011); *United States v. Maulding*, 627 F.3d 285, 286 (7th Cir. 2010); *United States v. Shrake*, 515 F.3d 743, 747 (7th Cir. 2008).

Third, the enhancement in this case was not, as a factual matter, based solely on the age of the children portrayed. The government argued in favor of the application of section 2G2.2(b)(4) not only because of images of sexual penetration of prepubescent minors but also because McLaughlin possessed images of acts designed to degrade and humiliate the victims. *See United States v. Rodgers*, 610 F.3d 975, 978–79 (7th Cir. 2010) (holding that the 2G2.2(b)(4) enhancement applies not only to sexual acts likely to cause physical pain but also to sexual gratification which is purposefully degrading and humiliating, and to images of conduct which causes mental suffering or psychological or emotional injury to the victim); *United States v. Turchen*, 187 F.3d 735, 739–40 (7th Cir. 1999) (same). Specifically, the government contended that images of victims forced to perform bestiality and images of men urinating or ejaculating on the faces of victims would be considered degrading and humiliating without reference to the age of the victims in-

volved. *See Turchen*, 187 F.3d at 737–40 (finding that an image of an adult urinating on the face of a child victim qualified for the section 2G2.2(b)(4) enhancement). McLaughlin's collection included all of these types of images.

Moreover, the district court expressly found that the 2G2.2(b)(4) enhancement did not constitute double-counting because it was possible to apply the 2G2.2(b)(2) increase for material portraying a prepubescent minor without any depiction of violence. The court noted that both 2G2.2(b)(2) and 2G2.2(b)(4) share an element of sexual exploitation of a child but that age alone was sufficient to apply subsection (b)(2). The added element of violence was required for subsection (b)(4). The court also noted that it was applying the 2G2.2(b)(4) enhancement in this case because of images that portrayed conduct "aimed at degrading the individual." R. 61, at 14. Because some of the images possessed by McLaughlin fell into that category irrespective of the age of the victim, the court concluded there was no overlap between the two enhancements and thus no double-counting. McLaughlin's objection to the 2G2.2(b)(4) enhancement therefore fails on both the law and the facts.

**B.**

McLaughlin next contends that his sentence was based on speculation and unfounded allegations. First, he complains that the district court accepted the government's argument regarding the market thesis, which he asserts is nothing more than unfounded conjecture. He describes the market thesis as the theory that a defendant's possession and distribution of child pornography increases the demand for production,

leading to the sexual exploitation of more children. He asserts that there is no empirical proof for a causal relationship between consumption and production of pornography in the internet age. Contrary to the defendant's claim, though, the district court did not rely on the market thesis in setting his sentence. In responding to defense counsel's argument about the market thesis, the district court noted:

> As far as the market theory is concerned, I am not of the opinion that it's either one or the other, that is, that either the images would not be produced if there wasn't a market or that every time someone uses them the market is expanded. It seems to me there's an element of both here. Part of the motivation for producing these pictures is showing them to others. … And the fact that there are so many others out there who want to see them is a clear motivation. There is at least some truth, in my opinion, to the market thesis. I don't believe that it is a 100 percent accurate description of the effects of the traders and possessors of these materials, but there is, in my opinion, some basic truth for it.

> We come down to, as almost always in these situations, deterrence and rehabilitation.

R. 61, at 35. The court then proceeded to fashion a sentence focused mainly on deterrence and rehabilitation, taking into account the other factors set forth in 18 U.S.C. § 3553(a).

As these remarks indicate, the court did not reach a conclusion on the validity of the market theory, much less rely on it in setting McLaughlin's sentence. Instead, the court properly relied on the section 3553(a) factors in determining

the sentence. Nor is there any reason to conclude that the court erred in finding "some basic truth" in the market thesis. *See Paroline v. United States*, 134 S. Ct. 1710, 1717 (2014) ("The demand for child pornography harms children in part because it drives production, which involves child abuse."). At least one of the victim impact letters submitted to the court provides anecdotal support for the theory that consumers of child pornography sometimes influence producers to abuse more children. The mother of a child portrayed in images possessed by McLaughlin reported that her daughter's "abuser adapted to serve his market—whatever his audience was looking to acquire, that's what happened to her." R. 64 (attachment). We emphasize that there is no indication in the record that McLaughlin personally influenced that particular abuser; that child's abuse occurred many years prior to McLaughlin's arrest. But that letter supports the idea that consumers of child pornography influence producers in ways that lead to increased harms to children. *See United States v. Blum*, 534 F.3d 608, 612 (7th Cir. 2008), *abrogated on other grounds by United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012) (noting Congress's determination that the manufacture and possession of any child pornography itself feeds the market and increases demand for it).

McLaughlin next objects that the court relied on an unfounded observation that, as a consumer, he was just a step away from committing a contact offense against a child. According to McLaughlin, there is no empirical support for the idea that consumers of child pornography are more likely to commit contact offenses, and in his case, a psychiatrist had

opined that he presented a very low risk of recidivism. In discussing the need for deterrence, the court remarked:

> Your client's conduct, his clear, almost gleeful enjoyment of these materials, his solicitation of more materials, his enjoyment of sharing these materials with others and seeking to have others give him new materials is not only troubling in the sense that it's so contrary to what is decent, it's troubling in the sense that it's a clear motivation that must be with him all the time. And that's just a step away from actual engagement in the abuse of children himself.

R. 61, at 16. Contrary to McLaughlin's claim, nothing in that statement indicates that the court concluded that McLaughlin was likely to commit contact offenses. Instead, the court was accurately describing McLaughlin's conduct as a step removed from contact offenses. A review of the sentencing transcript as a whole indicates that the court was aware of the psychiatrist's report and accounted for the difference between the harms caused by a consumer versus a producer of child pornography, expressly noting that "this defendant is not a producer of the pornographic images." R. 61, at 34. Thus the court was not confused about the facts underlying McLaughlin's conduct and did not incorrectly assume that McLaughlin was also a producer or a likely contact offender, as the defendant asserts.

## C.

Because McLaughlin did not object to the imposition of a fine at the time of sentencing, we review the court's decision to levy a fine for plain error only. *United States v. Riley*, 493 F.3d 803, 810 (7th Cir. 2007); *United States v. Bauer*, 129 F.3d 962, 964

(7th Cir. 1997). In order to reverse for plain error, we must find (1) error (2) that is plain, and (3) that affects the defendant's substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993); *Aslan*, 644 F.3d at 540. An error is plain if it is clear or obvious. *Olano*, 507 U.S. at 734; *Aslan*, 644 F.3d at 540. "An error 'affects the defendant's substantial rights' when it is prejudicial, that is, when it has affected the outcome of the district court proceedings." *Aslan*, 644 F.3d at 540–41 (quoting *Olano*, 507 U.S. at 734).

McLaughlin contends that the court erred by not adequately explaining the basis for the fine. We find no error, plain or otherwise, in the district court's decision. The court adopted the PSR, which contained an extensive basis for the imposition of a fine. "[T]he rule in this circuit is that express or specific findings regarding each of the relevant factors to be considered before imposing a fine are not required." *Bauer*, 129 F.3d at 966. If the court adopts the PSR, the defendant does not object to the PSR, the PSR contains an adequate basis to support the fine, and it is clear that the court considered the relevant statutory factors, there is no error. *See Bauer*, 129 F.3d at 968. First, in this case, the PSR set forth in great detail McLaughlin's ability to pay a fine, concluding that he had more than $130,000 available to pay a fine. Second, the PSR noted that the fine was required in every case except where the defendant demonstrates an inability to pay. McLaughlin does not contend that he is unable to pay. Third, the PSR included the factors the court should consider in setting the amount of the fine, including the costs of incarceration. The PSR noted that the Administrative Office of the United States Courts currently estimated the monthly cost of confinement to be $2357.

McLaughlin was sentenced to 130 months' imprisonment, a time frame expected to cost the government approximately $306,410. A fine of $50,000 was well within the guidelines range, far less than the cost of imprisonment, and within McLaughlin's well-documented ability to pay. There is no obvious error in the district court's assessment, much less one that affects McLaughlin's substantial rights.

## D.

We may quickly dispense with McLaughlin's remaining arguments, namely that the court failed to address his argument regarding his susceptibility to abuse in prison, and that the court ordered a substantively unreasonable sentence. McLaughlin contended that he would be unusually susceptible to abuse in prison because he had been convicted of a crime involving child pornography. But he did not raise any facts specific to himself personally that would render him more at risk in prison than any other defendant convicted of an offense involving child pornography. Because his argument is a generic challenge that would apply to every defendant convicted of a child pornography offense "rather than one tailored to his unique characteristics and circumstances, it is not one that the district judge must explicitly address." *United States v. Schmitz*, 717 F.3d 536, 542 (7th Cir. 2013). Our review of the PSR reveals no special vulnerability for McLaughlin based on his personal characteristics. The court was not required to expressly address this generic argument in mitigation.

McLaughlin also maintained that his sentence was substantively unreasonable because the United States Sentencing

Commission recently released a report to Congress calling for revisions to section 2G2.2, and because many courts recognize flaws in that particular guideline and sentence defendants below the guidelines range to account for these perceived flaws. *See* United States Sentencing Comm'n, P. Saris et al., Federal Child Pornography Offenses (2012) (hereinafter "Report").

The Eleventh Circuit recently addressed and rejected a very similar argument from a defendant challenging the continued validity of section 2G2.2 in light of the Report:

> We agree with the government that the Commission's 2013 report does not render the non-production child pornography guidelines in § 2G2.2 invalid or illegitimate. Rather, the Commission recommends that Congress enact legislation providing the Commission with express authority to amend [§ 2G2.2]" The publication of the 2013 report does not change the statutory sentencing scheme, the applicable sentencing guidelines, or the binding precedent about § 2G2.2 in this Circuit.

*United States v. Cubero*, — F.3d —, —, 2014 WL 2595781, *9 (11th Cir. June 11, 2014). In *Cubero*, the court commented that, although the district court was certainly free to consider the Report in choosing the ultimate sentence, the Report did nothing to invalidate section 2G2.2. Nor did the court's use of section 2G2.2 render Cubero's sentence procedurally or substantively unreasonable because the absence of empirical evidence is not an independent ground that compels the invalidation of a guideline. *Cubero*, 2014 WL at *9. *See also United States v. Grigsby*, 749 F.3d 908, 910–12 (10th Cir. 2014),

*petition for cert. filed*, — U.S.L.W. — (U.S. July 10, 2014) (No. 14-3146) (rejecting a similar categorical challenge to guideline 2G2.1 based on the Report). We are inclined to agree with our sister circuits. Congress and the Commission are responsible for altering the guidelines, and the absence of an empirical basis does not render a guidelines provision *per se* unreasonable or irrational. *Grigsby*, 749 F.3d at 911 (citing *United States v. Miller*, 665 F.3d 114, 121 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2773 (2012)). The district court was free to consider the Report but using the guideline in its current form did not render McLaughlin's sentence substantively unreasonable. "[D]istrict courts must treat the Guidelines as the starting point and the initial benchmark." *Kimbrough v. United States*, 552 U.S. 85, 108 (2007). Contrary to McLaughlin's contention, then, the district court was obligated to consider the properly calculated guidelines sentence in determining the appropriate sentence. The court was clearly aware that it was free to reject the guidelines sentence; the court in fact sentenced McLaughlin twenty-one months below the low end of the guidelines range. In short, there is nothing substantively or procedurally amiss with McLaughlin's sentence. *Rita*, 551 U.S. at 341–49; *Anobah*, 734 F.3d at 736; *Mykytiuk*, 415 F.3d at 608 (sentences that are within the properly calculated guidelines range are entitled to a rebuttable presumption of reasonableness). For all of these reasons, the judgment of the district court is

AFFIRMED.