In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3265

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KENNETH RANEY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:12-cv-00100-wmc-1 — **William M. Conley**, *Chief Judge.*

ARGUED MAY 21, 2015 — DECIDED AUGUST 12, 2015

Before WOOD, *Chief Judge*, and ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Kenneth Raney was convicted of interstate travel with intent to engage in a sexual act with a minor, in violation of 18 U.S.C. § 2423(b), and attempt to manufacture child pornography, in violation of 18 U.S.C. § 2251(a). He was sentenced to 145 months' imprisonment, followed by three years of supervised release. After successfully serving the term of imprisonment, Raney faltered during

the period of supervised release, skirmishing with three
different probation officers. The district court ultimately
revoked his supervised release and returned him to prison. He
appeals from the order revoking his supervised release. We
affirm the court's revocation of supervised release but we
vacate and remand for resentencing.

**A.**

At the time of his initial sentencing, the district court
imposed on Raney thirteen "Standard Conditions of Supervi-
sion" and five additional "Special Conditions." Raney subse-
quently agreed to four additional Special Conditions, for a total
of twenty-two. Shortly after his release from prison in February
2012, Raney's probation officer reported to the court that
Raney violated two of the conditions of his supervision. In May
2012, the officer reported that Raney had failed to report to the
probation office within seventy-two hours of his release, and
that he had associated with a felon, Timmy Reichling, without
the permission of his probation officer. The court took no
action on these violations because Raney was otherwise
compliant and was shortly transferring out of the Northern
District of Illinois to the Western District of Wisconsin. Raney
was admonished not to associate with the felon (who was also
Raney's cousin) without seeking the permission of his proba-
tion officer.

A new probation officer took over Raney's supervision in
Wisconsin in July 2012. In September 2012, the new probation
officer filed two petitions for warrants alleging violations of the
Standard and Special Conditions of supervision. In particular,
the officer alleged that Raney was again in unsupervised

contact with his cousin, and that he was found in possession of a memory stick without prior approval from his probation officer. After a hearing, the district court decided not to revoke Raney's supervised release but warned him to adhere scrupulously to the conditions imposed.

In January 2014, Raney was again assigned a new probation officer, Kristin Kiel. In April of that year, Kiel requested a modification to the conditions of supervised release, requiring Raney to submit to electronic monitoring for 120 days because a polygraph examiner had determined that Raney was not truthful in answering two questions during a polygraph test. Raney consented to the monitoring and the court accordingly modified the conditions. Against this backdrop of Raney's repeated issues with supervised release, in September 2014, Kiel filed another petition for a warrant, this time alleging that Raney had violated Standard Condition 3, and that he had failed to make agreed payments towards the cost of his electronic monitoring.[1]

Standard Condition 3 provided that "the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer[.]" R. 2-4, at 3. According to Kiel's petition,

> On May 31, 2014, Kenneth Raney was granted permission to travel outside the Western District of Wisconsin to visit the

---

[1] At Raney's revocation hearing, the government failed to present any evidence regarding Raney's failure to pay the cost of electronic monitoring. The court therefore treated that part of the petition as withdrawn.

Milwaukee County Zoo with his cousin, Dan, and Dan's girlfriend, Cindy. Although Mr. Raney specifically informed this officer that only he, Dan and Cindy would be going on the trip, a Jackie Hauser and her two minor sons also went with them.

On September 10, 2014, during the pre-test phase of a sex offender polygraph evaluation, Kenneth Raney told the polygrapher that his U.S. probation officer was aware of a sexual relationship he had with "Jackie," and said that his U.S. probation officer was aware that he went camping with "Jackie" and her two minor sons during the weekend of September 6, 2014. At the time Mr. Raney was interviewed by the polygrapher, this officer was not aware of Mr. Raney's relationship with Jackie or of the camping trip.

R. 16, at 1. After recounting Raney's past problems with supervision, the petition continued:

During the pre-test phase of a sex offender polygraph on September 10, 2014, Mr. Raney indicated that this officer [Kiel] was aware of his girlfriend "Jackie," the fact that she has two young sons, and the fact that they went camping in his recreational vehicle the weekend of September 6, 2014. This was not a true statement. On the monthly supervision report form for sex offenders submitted by Mr.

> Raney on September 9, 2014, for the month of
> August, he indicated that he was seeing
> "Jackie Hauser" and noted that she had sons
> ages 10 and 12. On September 11, 2014, this
> officer received a text message from Mr.
> Raney indicating, "Woman im seeing, Jackie,
> phone number is xxx-xxx-xxxx." Mr. Raney
> first told his sex offender therapist about
> "Jackie" on September 19, 2014. This officer
> conducted a telephone interview with Jackie
> Houser [sic] on September 16, 2014. Ms.
> Houser [sic] stated that she had been dating
> Mr. Raney since June 2014. She stated that
> she and her sons went to the zoo with Mr.
> Raney early in their relationship. She esti-
> mated they see each other every other week-
> end. She stated she and her two youngest
> children, sons ages 12 and 10, went camping
> with Mr. Raney in his camper the weekend of
> September 6, 2014.

R. 16, at 2.

At the revocation hearing, the United States presented testimony from Kiel and from Susan McDonald, Raney's therapist. Kiel testified that on May 31, 2014 at 4:23 p.m., Raney sent her a text message:

> Dan and cindy are thinking of going to zoo in
> milwaukee. They asked me to go if they do.
> Told them i ld ask u. so is it ok

R. 24-3. Standard Condition 1 required Raney to ask for permission for this trip because Milwaukee is outside the Western District of Wisconsin, where Raney was serving his supervised release. R. 2-4, at 3 ("the defendant shall not leave the judicial district without the permission of the court or probation officer"). Kiel texted in response, "Who is driving?" Raney responded, "Dan, cindy is in wheelchair." Kiel replied, "I need Dans phone number please. Then text when you leave and when you return please." R. 24-3. Raney provided numbers for Dan and Cindy.

Kiel testified that the next morning at 7:09 a.m., Raney sent her a text message stating, "We are going to zoo now." Kiel then called Dan, who was, at that very moment, driving to the zoo. Unbeknownst to Kiel, Dan was talking to her on a hands-free speaker phone, in a conversation that could be heard by all of the occupants of the car. Also unbeknownst to Kiel, those occupants included not only Dan, Cindy and Raney, but also Cindy's cousin Jackie Hauser and Jackie's two sons, aged ten and twelve. Kiel was concerned about Raney going to a zoo, a place where he was likely to have contact with children and she asked Dan to "act as a third-party custodian of sorts" to ensure that Raney was not alone with children at any time. She asked him to accompany Raney to the bathroom at the zoo and to ensure that he was not alone with children. With Dan's assent, she approved the trip. Kiel testified that she would not have allowed Raney to go on the zoo trip with children. Kiel did not learn that Raney was dating Jackie until she received a text from Raney on September 11, 2014, several months after the zoo trip, informing her of the relationship and passing along Jackie's phone number.

When Kiel subsequently called Jackie, she learned that Jackie had been dating Raney since approximately June 14, that Jackie and her sons had gone to the zoo with Raney early in the relationship, and that Jackie and her sons had gone camping with Raney in his camper on September 6. According to Kiel, Jackie equivocated when asked if her sons had been left alone with Raney during any part of the camping trip, at first saying that it was possible but then stating that she never left her sons alone with Raney, and that she took them to the bathroom with her consistently throughout the trip. Given the ages of the boys, Kiel did not believe this claim. During Kiel's testimony, the government admitted into evidence, without objection, Raney's monthly written supervision reports to Kiel for May, June, July and August.[2] Although Raney began dating Jackie in June, he denied being in an intimate relationship on the May, June and July reports. He admitted the relationship and the contacts with Jackie's children only in the August report, shortly before he was scheduled to submit to another polygraph examination.

Susan McDonald testified that Raney was referred to her for therapy by the United States Probation and Pretrial Office. McDonald first learned of Raney's relationship with Jackie Hauser in a session on September 19, 2014. At that time, Raney revealed that he had a new girlfriend whom he met through his cousin in April 2014. Raney told her that Jackie was dating someone else when they first met and that he first asked her

---

[2] Each monthly report was filed shortly after the end of the reporting month. For example, the report covering Raney's conduct in May was filed in June, and the August report was filed in September.

out on June 1, when they went to the zoo with her sons. By August, they were dating regularly and Jackie's sons sometimes accompanied them on outings. He told McDonald that he planned to go camping with Jackie and her sons the next day (September 20) and that they had previously taken a camping trip.

In his defense, Raney called Dan Reichling, the cousin who accompanied him to the zoo, and Jackie Hauser.[3] Dan testified that he and his fianceé, Cindy, planned to go to the Milwaukee zoo. He invited Raney to accompany them. On the way there, they picked up Cindy's cousin, Jackie. Dan asked Raney if he had spoken to his probation officer about the trip and Raney said he had. After the group picked up Jackie and her sons, Kiel called and Dan took the call on his car's speaker phone. Kiel asked what was going on and Dan told her they were on their way to the zoo. According to Dan, Kiel then told him not to let Raney go to the bathroom by himself. Dan understood from his knowledge of Raney's conviction that Raney could have only supervised contact with children. Dan did not mention to Kiel the presence of Jackie or the children because he believed that Raney had already told his probation officer about them. Raney remained silent during the call.

Jackie Hauser testified that she met Raney through her cousin on May 3, 2014 and began dating him in August of that year. Although she saw him a few times at events with her cousin between May and August, she was dating someone else

---

[3] Dan and Timmy Reichling are both cousins of Raney. Although Timmy is a convicted felon with whom Raney could not associate without supervision, the record reveals no similar concern with Dan.

at that time. She acknowledged going to the zoo on June 1st with Dan, Cindy, Raney and her sons, at the invitation of Cindy. She denied having an intimate relationship with Raney until August 2014, and admitted going camping with Raney and her sons on September 6 and September 20, 2014, in Raney's camper.

From this evidence, the government argued that Raney violated Standard Condition 3 with a "lie by omission" when he asked for permission to go to the zoo but failed to disclose that Jackie Hauser and her sons would be present on the trip, instead telling the probation officer that he was going with Dan and Cindy. The government also noted that Raney was in the car with Jackie and her children when his probation officer was advising Dan not to allow Raney to go to the bathroom by himself, indicating that this was an "obvious lie by omission." When Raney's counsel countered that the government had not met its burden of proof, the court stated that Raney failed to comply with his reporting obligations because he had filed reports with his probation officer in May, June, July and August denying that he had gone to any location where he viewed, was near to, or spoke to anyone who appeared to be under the age of eighteen, when he in fact had gone to the zoo with children and had gone camping with children. The court noted that Raney deliberately omitted information regarding his contacts with children and affirmatively lied about such contact in his monthly reports. The court also noted that Raney "specifically only referred to his cousin and his cousin's girlfriend and he knows he only has approval for that contact." R. 31, at 82. The court therefore revoked Raney's supervised

release and sentenced him to nine months' imprisonment and twenty-four months of supervised release.

In a subsequent written order, the court issued findings of fact:

> Mr. Raney was granted permission to travel outside the Western District of Wisconsin to visit the Milwaukee County Zoo on May 31, 2013, [sic] with his cousin and his cousin's girlfriend. Although the defendant specifically informed Probation Officer Kris Kiel that only his cousin, his cousin's girlfriend and he would be going to the zoo, another adult female and her two minor sons went with them as well. The defendant's supervising probation officer was not made aware that this other adult and two minors accompanied the group to the zoo until almost four months later.

R. 25, at 2-3. The court found the failure to disclose particularly egregious because Raney was in the car and able to hear the phone call between Kiel and Dan and yet did nothing to correct the misimpression, only to deny any contact with children in a written report filed two days later. The court concluded that Raney's intent to deceive was confirmed by the testimony of his own witnesses, who admitted that Raney had engaged in repeated unauthorized contacts with children while at the same time denying these contacts in his written reports to his probation officer. The court also imposed a new Special Condition 10 for Raney's supervised release, requiring him to

sell his recreational vehicle, which we will discuss below. Raney appeals.

**II.**

Raney originally presented four issues for appeal: (1) whether the court's consideration of polygraph evidence violated his confrontation rights under the Fifth Amendment and Fed. R. Crim. P. 32.1(b)(2)(C); (2) whether the court erred when it found that Raney violated Standard Condition 3 of his supervised release by not disclosing information to his probation officer and by lying to a polygraph examiner; (3) whether the court erred by failing to consider relevant section 3553(a) factors[4] when it sentenced Raney to nine months' imprisonment, twenty-four months of supervised release, and imposed a new condition of supervised release requiring him to sell his RV camper; and (4) whether the ban on Raney's use of a mobile home (Special Condition 10) is null because it was not orally pronounced as part of his sentence. At oral argument for this appeal, Raney's lawyer informed the court that Raney had already completed the nine months of imprisonment ordered by the district court, and that his client might wish to withdraw certain arguments as a result. Counsel subsequently filed a letter with the court withdrawing his challenge to the admission of the polygraph evidence, noting that "a new revocation hearing will not provide any effective relief given that Mr. Raney has served his imprisonment." Raney also withdrew "his *Thompson* challenge (issue III)," noting that he "can contest improper supervised release conditions in the trial court via an

---

[4]  *See* 18 U.S.C. § 3553(a).

18 U.S.C. § 3583(e)(2) motion without the risk of longer imprisonment posed by a full resentencing hearing."[5] However, Raney "continue[d] to assert that a forced sale of his RV violates his Due Process rights." He therefore sought a limited remand on the RV issue if this court were to uphold his revocation. Because Raney continued to challenge the validity of his revocation while at the same time professing a desire to avoid a new revocation hearing and the possibility of a longer term of imprisonment, we asked Raney to clarify to the court whether he meant to challenge the revocation itself or was limiting his appeal to the issues related to the forced sale of his RV. His lawyer responded by withdrawing his withdrawal:

> Mr. Raney has informed counsel that he wishes to challenge the revocation itself. Accordingly, he does not limit his appeal to the forced sale of the RV. He wishes to assert all issues raised in his briefs.

June 28, 2015 Rule 28(j) Letter of Counsel. We will therefore address all of the issues originally raised in Raney's appeal.[6]

## A.

---

[5] *See United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015).

[6] Although Raney has served his sentence of imprisonment, he remains on supervised release, and therefore his appeal is not moot. *United States v. LaShay*, 417 F.3d 715, 716 n.1 (7th Cir. 2005) (when a defendant has completely served a term of imprisonment, the appeal is not moot where he is still serving a term of supervised release because on remand, the district court could still alter the overall sentence).

Raney first argues that the court's consideration of evidence from a non-testifying polygraph administrator violated his right to confront an adverse witness under the Fifth Amendment and under Federal Rule of Criminal Procedure 32.1(b)(2)(C). At the revocation hearing, the government introduced into evidence two polygraph reports, dated April 10, 2014 and September 12, 2014. The revocation petition alleged that Raney falsely told the polygraph examiner for the September test that he had informed his probation officer about his relationship with Jackie Hauser, and that the officer was aware that he had gone camping with Hauser and her two children on September 6. At the government's offer of the first report into evidence, Raney's counsel took exception, stating, "I object on Rule 702 grounds. No foundation that's reliable." The court asked for clarification, saying, "You're objecting because of its lack of expertise?" Counsel replied, "It has polygraph results in it." The court then admitted the report subject to that objection, stating that it did not intend to "rely on the science of it," but only "rely on it as information that this probation officer had before her in making decisions about how to proceed." When the government introduced the second polygraph report, the court stated that it would be admitted on the same grounds as the first, "subject to the 702 limitation, unless, Counsel, you wish to add any other objection." Raney's counsel replied, "No. That's fine, Judge." R. 31, at 28-29 and 41.

As is clear from this exchange, Raney did not raise a Fifth Amendment or Rule 32.1 objection to the polygraph examiner's reports at the hearing. We will therefore review the district court's decision for plain error. *United States v. Webster*, 775 F.3d 897, 902 (7th Cir.), *cert. denied*, 135 S. Ct. 2368 (2015);

*United States v. McLaughlin*, 760 F.3d 699, 706 (7th Cir. 2014). *See also United States v. Blount*, 502 F.3d 674, 677-78 (7th Cir. 2007) (noting that an objection on one ground to the admission of evidence does not preserve other, unasserted grounds for appeal). In order to reverse for plain error, we must find (1) error (2) that is plain, and (3) that affects the defendant's substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993); *McLaughlin*, 760 F.3d at 706. An error is plain if it is clear or obvious. *Olano*, 507 U.S. at 734; *McLaughlin*, 760 F.3d at 706. An error affects the defendant's substantial rights when it is prejudicial, that is, when it has affected the outcome of the district court proceedings. *Olano*, 507 U.S. at 734. It appears from the record that the court did not rely in any manner on the April 10 report and Raney does not assert any particular prejudice from the April 10 report. We therefore will focus on the September 12 report.

Even if we assume for the sake of argument that the court plainly erred in admitting this evidence, we reject Raney's challenge because the evidence did not affect the outcome of the proceedings. First, the district court expressly limited the use of this evidence, indicating that it would not accept the science of either polygraph exam but would rely on the reports only to show what information the probation officer had available when making her decisions. Ultimately, the district court did not mention the polygraph evidence in its oral ruling and mentioned the September 12 report only in passing in its written order:

> Unlike the October 4, 2013, revocation hear-
> ing, the court can also find no comfort in his

recent statements to a polygrapher. On September 10, 2014, the defendant told the polygrapher that his supervising probation officer was aware of a sexual relationship he had with the mother of the two minor males and that the defendant had gone camping with the mother and the two minor males during the weekend of September 6, 2014, when in fact the defendant's supervising officer was not aware of the defendant's romantic relationship or of the camping trip.

R. 25, at 3. In other words, the court did not weigh this evidence against Raney, but rather commented that it could not use the polygraph in Raney's favor, as it had done at a prior revocation hearing. Indeed, at no point in the oral or written decision did the court use Raney's statements to the polygraph examiner as evidence that he violated Standard Condition 3. Because there is no indication that the court weighed the polygraph evidence against Raney, the admission of this evidence did not affect the outcome of the district court proceedings.[7] There is therefore no plain error.

**B.**

---

[7] Raney's August monthly report to his probation officer was received in that office on September 9; the polygraph exam occurred on September 10; Raney texted his probation officer regarding Hauser on September 11; and the polygraph report was issued on September 12. The court's statement was thus literally true. Kiel had not yet seen Raney's August monthly report when Raney told the polygraph examiner that Kiel was aware of his relationship with Hauser and his contact with her children.

Raney next asserts that the court erred when it found that he violated Standard Condition 3 by failing to disclose information to his probation officer and giving false information to a polygraph examiner. According to Raney, the government failed to prove that he lied and in particular failed to prove that he lied in response to an inquiry from his probation officer. Instead, he contends, the government demonstrated at most that he omitted certain information when he asked for permission for the zoo trip. Standard Condition 3, he asserts, "only prohibits affirmative misinformation in response to a probation officer's questions." Defendant's Brief at 19. Moreover, the "baldest of lies to the polygraph administrator could not be a violation of Standard Condition No. 3," according to Raney, because the polygraph administrator is not his probation officer. At a revocation hearing, the government must prove by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3); *United States v. Preacely*, 702 F.3d 373, 375 (7th Cir. 2012). In general, we review the revocation of supervised release for abuse of discretion, and we review the district court's factual findings supporting that revocation for clear error. *Preacely*, 702 F.3d at 375.

As we noted above, the court did not rely on any lies to the polygraph examiner in finding that Raney violated Standard Condition 3, and that argument therefore requires no further discussion. Instead, the court found that the government proved at least two misrepresentations to the probation officer: first, the government demonstrated that Raney secured permission to leave the district and go to the zoo by omitting from his request the fact that Hauser and her two minor sons

were also accompanying him on the trip. Second, Raney filed false supervision reports to his probation officer in May, June, July and August of 2014, denying that he had unreported contact with minors when in fact he had gone to the zoo with children and had other unreported contacts with children. R. 31, at 79 ("And I'm looking just at the government exhibits and on – in June, July and August, I guess May as well, he is asked have you been at or gone to any location where you viewed or near [sic] or spoke to anyone who was and/or appeared to be 18 years of age or younger and you have not reported to your officer and treatment provider, and each time he said no. He had been on repeated trips in an RV with underage children. He'd gone to the zoo with underage children."); R. 31, at 80 ("he's been warned twice by this court to make sure he's in strict compliance and instead he's having multiple contacts with underage children and deliberately omitting that information; in fact, lying about it in his reports every month. … I don't get what you think the government needed to prove beyond that."); R. 25, at 2-4 (noting that Raney both omitted information in his request to travel outside the district to the zoo and that he "affirmatively denied in writing" in his monthly supervision report to his probation officer that he had unreported contact with children).

Although Raney objected in his opening brief to the district court's use of a lie of omission to find a violation of Standard Condition 3, he did not object to the court's finding that he affirmatively lied in his monthly supervision reports until his reply brief, after the government pointed out this second basis for the district court's holding that he violated Standard Condition 3. In his reply brief, Raney complained for the first

time that the revocation petition did not allege that his monthly reports were a violation of Standard Condition 3, and that the lack of advance notice for this violation denied him due process under the Fifth Amendment and Rule 32.1(b)(1)(B)(i). Raney's contention fails for at least two reasons.

First, Raney's failure to attack in his opening brief the district court's holding that he violated Standard Condition 3 when he affirmatively lied in the monthly supervision reports constitutes a waiver of this objection. *United States v. Vallone*, 698 F.3d 416, 448 (7th Cir. 2012), *vacated on other grounds*, 133 S. Ct. 2825 (2013), *reinstated in relevant part*, 752 F.3d 690 (7th Cir. 2014) (having ignored a particular rationale for the district court's ruling in presenting an issue and making an initial argument on appeal, a defendant waived this aspect of his challenge); *United States v. Fuchs*, 635 F.3d 929, 933-34 (7th Cir. 2011) (failure to address district court's alternative holding on an issue waives any challenge to that holding); *United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006) (arguments raised for the first time in reply briefs are waived). In fact, Raney also failed to object to the admission and use of those reports at the revocation hearing itself. *See* R. 31, at 37 (admitting without objection the monthly reports for May, June, July and August).

Second, Raney has not identified any unfair prejudice from the government's use of the monthly supervision reports. Recall that these were reports that Raney himself submitted to his probation officer. He could hardly be surprised by the contents of reports that he authored. *See United States v. Rodriguez*, 803 F.2d 318, 321 (7th Cir. 1986) (where the evidence

is consistent with the language of the indictment, a defendant can hardly claim unfair surprise because the government was able to discover his own deed).

Finally, Raney wrote the reports in response to written inquiries from the probation officer. That fact eviscerates his argument that proof of a violation of Standard Condition 3 required a lie in response to an *inquiry*. The probation officer, through the monthly reports, posed numerous inquiries, including the key question here of whether Raney had "been at or gone to any location where you viewed, were near or spoke to, anyone who was and/or appeared to be 18 years of age or younger, that you have not reported to your officer and treatment provider?" During the month that Raney went to the zoo with Jackie Hauser's children, he answered "no" to this question. R. 24-5, at 3. Even if we were to accept Raney's contention that a lie of omission was insufficient to meet the language of Standard Condition 3, or that the lie must have been in response to an inquiry, this affirmative denial on the monthly report alone was enough for the court to find a violation of that Condition. There was no clear error in that factual finding and no abuse of discretion in revoking supervised release on that basis. *Preacely*, 702 F.3d at 375.

## C.

Raney next asserts that the district court erred when it failed to consider the relevant section 3553(a) factors when it imposed a sentence of nine months' imprisonment, twenty-four months of supervised release and certain discretionary conditions of supervised release. He also contends that the court erred in two ways in imposing a new Special Condition

10. First, he argues that the court abused its discretion in ordering him to sell his RV without giving him prior notice of this condition and an opportunity to object. Second, he complains that the court's oral pronouncement of this condition was more narrow than the written order, and that the oral pronouncement must control. Our review of a sentence imposed in a revocation proceeding is highly deferential. *United States v. Boultinghouse*, 784 F.3d 1163, 1177 (7th Cir. 2015). We have likened it to "'the narrowest judicial review of judgments we know,' namely judicial review of sanctions imposed by prison disciplinary boards." *United States v. Robertson*, 648 F.3d 858, 859 (7th Cir. 2011) (quoting *United States v. Kizeart*, 505 F.3d 672, 675 (7th Cir. 2007)). We will sustain the sentence so long as it is not plainly unreasonable. *Boultinghouse*, 784 F.3d at 1177; *Kizeart*, 505 F.3d at 673–75.

Because the parties agree on the last of the sentencing issues raised by Raney, we will address it first. At the very end of the sentencing hearing, the government stated that Probation Officer Kiel requested an additional special condition that Raney "not have an RV because it's a movable residence which makes it very difficult to monitor in terms of a sex offender." The court responded, "The request being that he sell it?" Kiel then replied, "Sell it." R. 31, at 89-90. Raney's attorney noted that Raney disclosed his purchase of the RV on his July report to the probation officer. Without further discussion, the court then ruled:

> I'm inclined to say that the RV is just not appropriate given the defendant's use of it without disclosing its use. And so I am going

> to require that he sell it and not own it during
> the period of his condition of release.

R. 31 at 91. In its written order, however, the court stated the terms of the new Special Condition 10 more broadly:

> In addition, given his misuse of the privilege,
> special condition no. 10 is added requiring
> the defendant to sell his RV Camper and
> prohibiting him from owning any mobile
> home, whether self-propelling or pulled on a
> trailer, during the period of supervised re-
> lease.

R. 25, at 5.

The government concedes that, when there is an inconsistency between the oral and written pronouncements of a sentence, the sentence pronounced from the bench controls. *United States v. Baker*, 755 F.3d 515, 523 (7th Cir. 2014); *United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005). In its initial brief, the government asked this court to vacate Special Condition 10 and order a limited remand with a corrective instruction to remove the language added in the written version of the order. The government otherwise urged the court to affirm Raney's new sentence, including the imposition of Special Condition 10 as pronounced at the sentencing hearing. However, in its June 2, 2015 Rule 28(j) letter, the government altered its stance:

> In further reviewing the condition for the sale
> of defendant's RV, the government now
> concedes the case should be remanded so the

district court can consider the condition in light of any additional arguments by the parties. *See United States v. Shannon*, 743 F.3d 496, 500-501 (7th Cir. 2014).

In *Shannon*, we held that a district court may impose a special condition of supervised release if, first, the condition is reasonably related to the penological purposes set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(C), and (a)(2)(D). 743 F.3d at 500. *See also* 18 U.S.C. § 3583(d). The condition must be reasonably related to (1) the defendant's offense, history and characteristics; (2) the need for adequate deterrence; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with treatment. *Shannon*, 743 F.3d at 500; *United States v. Goodwin*, 717 F.3d 511, 522 (7th Cir.), *cert. denied*, 134 S. Ct. 334 (2013); *United States v. Angle*, 598 F.3d 352, 360–61 (7th Cir. 2010). Second, a special condition cannot involve a greater deprivation of liberty than is reasonably necessary to achieve the goal of deterrence, incapacitation, and rehabilitation. *Shannon* 743 F.3d at 500. And third, a special condition must be consistent with any pertinent statement that the United States Sentencing Commission issues. *Shannon,* 743 F.3d at 500; 18 U.S.C. § 3583(d)(3). The district court obliquely addressed the factors that we outlined in *Shannon*, and that explanation was arguably sufficient. However, the record also reflects that Raney was afforded no notice that the government would seek this new condition, and Raney had no meaningful opportunity to object. *United States v. Kappes*, 782 F.3d 828, 842 (7th Cir. 2015) (when imposing conditions of supervised release, advance notice is required for conditions that are not listed in the statute or guidelines).

We therefore accept the government's confession of error, vacate Special Condition 10 in its entirety, and remand so that the court may engage in a full analysis of the appropriateness of Special Condition 10.

We turn finally to Raney's broader objections to his nine month sentence of imprisonment and the additional twenty-four months of supervised release, which continue under the conditions imposed at his first sentencing, as modified over the years. Raney asserts that, in setting his new sentence, the court failed to consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7). *See* 18 U.S.C. § 3583(e)(3) (setting forth the factors that a court must consider when deciding whether to revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release). He contends that the court both failed to consider the relevant factors and also relied on irrelevant factors. He cites our opinion in *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), for the proposition that the court may not impose an additional term of supervised release without evaluating the propriety of the conditions of supervised release using the factors listed in section 3553(a). The government concedes that the district court did not explain its choice of a twenty-four month term of supervised release or justify its re-imposition of the original conditions of supervised release. Nevertheless, because Raney did not object on this ground at his sentencing hearing, the government urges us to find that the court committed no plain error. At most, the court asks that we remand so that the court may explain its sentence more fully.

But without any explanation for its selection of a twenty-four month term of supervised release or the conditions imposed, we are unable to review the propriety of the district court's decision. *Kappes*, 782 F.3d at 845 (in order to allow for meaningful appellate review, a district court must justify the conditions and the length of the term at sentencing by an adequate statement of reasons, reasonably related to the applicable § 3553(a) factors). We therefore vacate and remand the twenty-four month term of supervised release so that the district court may apply the appropriate sentencing factors and explain its decision.

The court arguably justified its selection of the nine month term of imprisonment. *See United States v. Phillips*, 2015 WL 3937527, *3, — F.3d — (7th Cir. 2015) (court's comments justifying within-guidelines sentence sufficient where court correctly calculated guidelines range and noted the relevant statutory factors supporting the sentence). And as we noted in *Phillips*, to the extent that Raney argues that the list of factors in section 3583(e) is exclusive, he is mistaken. — F.3d at —, 2015 WL 3937527 at *2. A district court may consider the factors listed in other subsections of section 3553(a) even though those factors are not mentioned in § 3583(e), so long as the court relies primarily on the factors listed in § 3583(e). — F.3d at —, 2015 WL 3937527 at *2. But "[w]hen a sentence consists of more than one form of punishment, such as prison, a fine, restitution, and supervised release, and one of the forms is as in this case altered by the appellate court, it cannot be assumed that the others should be unaffected." *United States v. Downs*, 784 F.3d 1180, 1182 (7th Cir. 2015) (citing *Kappes*, 782 F.3d at 866-67; *Thompson*, 777 F.3d at 382). We therefore

vacate the entire sentence and remand for resentencing consistent with this opinion. On remand, the court should apply our recent decisions addressing the problem of unjustified, vague or inappropriate conditions of supervised release. *See United States v. Sandidge*, 784 F.3d 1055, 1067-1069 (7th Cir. 2015); *Kappes*, 782 F.3d at 847-863; *Thompson*, 777 F.3d at 373-82. Many years have passed since Raney was first sentenced and the court first ordered the conditions governing his supervised release. The court and the probation office now have considerable experience understanding the challenges involved in supervising Raney. The conditions of supervised release may now be tailored to address those challenges as well as other issues the district court deems necessary after considering the factors set forth in section 3583(e).

## III.

In sum, we affirm the district court's decision to revoke Raney's supervised release. We vacate and remand his sentence for a full resentencing.

AFFIRMED IN PART;

VACATED AND REMANDED IN PART.