In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1500

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GUILLERMO PATLAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:18-cr-20034-SEM-EIL-1 — **Sue E. Myerscough**, *Judge.*

ARGUED DECEMBER 3, 2021 — DECIDED APRIL 12, 2022

Before ROVNER, HAMILTON, and JACKSON-AKIWUMI, *Circuit Judges*.

ROVNER, *Circuit Judge.* Guillermo Patlan appeals from the sentence that the district court imposed after his second revocation of supervised release. He asserts that the court erred by failing to recognize its discretion to treat a failed drug screening as a Grade C rather than a Grade B violation. He also

claims that the court erred when it imposed a term of home confinement without justifications as part of his new conditions of supervised release. We affirm.

**I.**

In 2012, Guillermo Patlan pled guilty to conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841 and 846, and 18 U.S.C. § 2. The district court sentenced him to ninety-five months' imprisonment, to be followed by a four-year term of supervised release. After a retroactive amendment to the sentencing guidelines, the district court reduced his term of imprisonment to seventy-nine months. Patlan completed that term of imprisonment and began his first period of supervised release in April 2017. Because of positive drug tests and other violations, in January 2019, the court modified the terms of his release to include six months of home confinement. In June of that year, Patlan's probation officer filed a petition to revoke his supervised release, alleging that Patlan had failed to participate in substance abuse treatment and had possessed controlled substances on five occasions, as evidenced by positive drug tests. Patlan admitted the violations and the district court revoked his supervision and sentenced him to a term of eighteen months' imprisonment. The court also imposed a three-year term of supervised release with conditions that included six months of home confinement.

Patlan completed the prison term and began his second period of supervised release in September 2020. Although he initially complied with the conditions imposed, in December 2020, he tested positive for amphetamine and methamphetamine. The following month, he committed domestic battery,

a charge for which he pled guilty in state court. His probation officer filed a petition to revoke supervision, alleging that he twice violated the condition that he not commit another federal, state, or local crime. In particular, the petition alleged two new crimes: first, Patlan "possessed and used amphetamine and methamphetamine" as evidenced by a positive drug test. Second, he committed domestic battery, a misdemeanor under Illinois law, when he attacked his girlfriend.[1]

Prior to the revocation hearing, the Probation Office filed a "Violation Memorandum" with the district court, detailing the history of Patlan's supervision as well as the alleged violations underlying the petition to revoke. R. 36. The Memorandum asserted that Patlan possessed and used amphetamine and methamphetamine as evidenced by a positive drug test, and that he had committed the offense of domestic battery when he battered his girlfriend. According to the Probation Office, the drug possession was classified as a Grade B violation of the terms of supervised release. In combination with Patlan's Criminal History Category V, the Probation Office calculated the guidelines range as eighteen to twenty-four months of imprisonment, and noted that the guidelines recommended imposing the unserved portion of home confinement, in this case sixty-one days, as an additional term of imprisonment. The Violation Memorandum also included proposed conditions for supervised release, together with justifications for each condition.

---

[1] The petition also alleged a number of unauthorized absences during the period of home confinement but because the government ultimately agreed to dismiss those charges, we need not address them.

The district court circulated its own tentative Conditions of Supervised Release along with justifications for those conditions so that the parties would have an opportunity to review them before the revocation hearing. R. 39. The court noted that, prior to sentencing, Patlan would have an opportunity to read the conditions and justifications, discuss them with his attorney, and object. The court directed Patlan to initial each of the conditions to confirm that he had read them, to sign the last page to affirm that he had reviewed the conditions and justifications, and to indicate whether he waived oral reading of the conditions at the hearing. The court noted that, with one exception, the conditions tracked those proposed by the Probation Office in its Violation Memorandum, and included two additional discretionary conditions that did not appear in that Memorandum. Those two conditions provided that Patlan would serve six months of home confinement at the start of his release from custody, and that he would comply with conditions of home confinement and monitoring during that term, leaving home only for a medical emergency, drug treatment, or with the advance permission of the Probation Office. The court did not include any justifications specifically addressing those last two discretionary conditions.

In its Commentary on Sentencing Factors, the government urged the court to impose a twenty-four month term of imprisonment plus the sixty-one days to account for the unserved period of home confinement. R. 38. In Patlan's Sentencing Commentary, he objected "to the application of the Grade B guideline range for policy reasons[.]" R. 40, at 1. He proposed that the court treat the drug charge as a Grade C violation and impose a below-guidelines sentence of thirteen

months. He contended that treating a positive drug screening as possession of a controlled substance overstates the seriousness of the violation conduct and leads to sentencing disparities, contradicts the plain language of 18 U.S.C. § 3583, and is at odds with the Sentencing Commission's policy statements and intent. Citing *United States v. Trotter*, 270 F.3d 1150 (7th Cir. 2001), Patlan acknowledged that failed drug screens may support an inference of possession but that courts were not required to draw the inference. Instead, courts possess the discretion to conclude that a positive drug test is insufficient to establish possession. Alternatively, he continued, the court retained discretion to vary from the Grade B guideline range and impose a sentence within the Grade C range of seven to thirteen months. He contended that the government's proposed sentence was far greater than was necessary and suggested that thirteen months was sufficient.

Importantly, Patlan also "stipulate[d] to the violation conduct alleged in Violation Numbers 1 and 2, as listed in the Petitions [sic] for Warrant or Summons for Offender under Supervision." R. 40, at 4. Violation Number 1 in that Petition described the drug offense:

> 1. LAW VIOLATION: POSSESSION OF A CONTROLLED SUBSTANCE … On or about December 28, 2020, Mr. Patlan possessed and used amphetamine and methamphetamine as determined by Alere Toxicology Services, after a urine specimen provided by the offender tested positive for amphetamine and methamphetamine. Mr. Patlan denied using amphetamine and methamphetamine.

R. 25, at 2. In addition to the stipulation, Patlan waived his right to a revocation hearing, and "plead[ed] guilty to those violations as alleged[.]" R. 40, at 3–4.

At the revocation hearing, the court listed the two charged violations, describing the first as "possessing and using amphetamine and methamphetamine," and the second as "[c]ommitting the offense of domestic battery." R. 45, at 5. Counsel for Patlan indicated that he was "willing to accept guilt" for both charged violations. *Id*. The court explained to Patlan directly that his "alleged violations involving the possession of amphetamine and methamphetamine [are] all within the scope of 18 United States Code Section 3583(g)(1) which mandates revocation." R. 45, at 8. Patlan indicated that he understood and that he wished to waive his right to a hearing. R. 45, at 8–9. Based on Patlan's concession that he was guilty of the charged violations, the court then found by a preponderance of the evidence that Patlan violated the terms of his supervised release by possessing and using amphetamine and methamphetamine, and by committing domestic battery. R. 45, at 9–10. In response to the court's questions, Patlan also confirmed that he had read the violation memorandum and reviewed it with his lawyer. R. 45, at 10.

The court then entertained Patlan's "policy objection" to the violation memorandum. Counsel argued that although *Trotter* allows courts to infer that a failed drug screen is a Grade B "possession" violation, the court is not required to so infer, and may instead treat a failed drug screen as a Grade C violation, which would result in a lower sentencing range. The government disagreed and contended that *Trotter* was binding and required the court to treat the failed drug screen as a Grade B

violation "because the defendant possessed amphetamine and methamphetamine." R. 45, at 11–12. The government explained that the court possessed the discretion to sentence Patlan as if the violation were Grade C rather than Grade B, but discouraged the court from doing so for a variety of reasons. The district judge noted that she had read *Trotter* again and concluded that government counsel was "correct in all of his points." R. 45, at 13. The court then found that the most serious offense was a Grade B violation.

Patlan's counsel then affirmed that she reviewed the court's conditions of supervision with her client and had no objections. R. 45, at 14. Patlan personally indicated that he had adequate time to review the conditions with his lawyer, and affirmed that he had initialed each condition and signed the last page. R. 45, at 14. The court then warned Patlan and his lawyer that "the failure to object at this time may result in waiver of any objection to the conditions on appeal." R. 45, at 14. In response to the court's question, Patlan indicated that he had no objections to the conditions as the court had amended them. *Id*. Patlan then expressly waived an oral reading of the conditions and justifications. R. 45, at 14–15.

After the government requested a sentence of twenty-four months of imprisonment followed by forty-eight months of supervised release, Patlan's counsel argued vigorously for a "variance to the Grade C guideline range of 7 to 13 months." R. 45, at 20. The court noted that the policy statements of the Sentencing Commission are advisory, not mandatory, and then sentenced Patlan to eighteen months' imprisonment (which included the sixty-one days of home confinement that were

remaining when his supervision was revoked), followed by twenty-four months of supervised release.

## II.

On appeal, Patlan asserts that the district court erred when it failed to recognize that it had discretion to reject the inference that he possessed controlled substances from a positive drug test. He also maintains that we must remand for resentencing because the court failed to provide justifications for the six-month term of home confinement imposed as a condition of supervised release, and because the court failed to pronounce that condition orally during the hearing. Both of Patlan's arguments miss the mark.

At a revocation hearing, the government must prove by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). In general, we review the revocation of supervised release for abuse of discretion, and we review the district court's factual findings supporting that revocation for clear error. *United States v. Raney*, 797 F.3d 454, 463 (7th Cir. 2015). We review the district court's interpretation of the sentencing guidelines *de novo*, and the findings of fact supporting the sentence for clear error. *United States v. McLaughlin*, 760 F.3d 699, 703 (7th Cir. 2014). Our review of a sentence imposed in a revocation proceeding is highly deferential; we will sustain the sentence so long is it is not plainly unreasonable. *United States v. Boultinghouse*, 784 F.3d 1163, 1177 (7th Cir. 2015).

In general, simple use of a drug constitutes a Grade C violation of the conditions of supervised release, the lowest level violation. Possession of a drug potentially supports a

Grade B violation, depending on whether it fits the section 7B1.1(a)(2) definition of Grade B, which encompasses "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." But in *Trotter*, we considered whether *use* of marijuana permits the district judge to infer that the user committed the crime of *possessing* that drug:

> This question has a simple answer. Of course use may support an inference of possession. A person might test positive for marijuana if he never touched the stuff but spent a lot of time around heavy smokers and ended up with some of the drug in his lungs. This is unlikely, but possible, and a district judge therefore might treat one or even two positive tests as inadequate to prove possession of the drug. But a judge also could infer from the presence of marijuana metabolites in the blood that the user possessed that drug, if only in the process of smoking a communal joint. Trotter tested positive at least 3 times and skipped a further 7 tests, which could support a conclusion that he knew that he would have tested positive on those occasions too. That is more than enough to permit a rational trier of fact to infer that Trotter possessed marijuana. The burden of persuasion for revocation of supervised release is a preponderance of the evidence, and the finding of possession on a record such as this cannot be deemed clearly erroneous. Inferring possession of a drug from the consumption of that drug is just as sensible as inferring, from the statement "I ate a

> hamburger for lunch," that the person possessed the
> hamburger before wolfing it down.

*Trotter*, 270 F.3d at 1153. That passage makes clear that the inference of possession is permissible but not required, depending on the circumstances.

But in this case, there was no need for the court to draw any inference at all. Patlan repeatedly admitted that he both used *and possessed* amphetamine and methamphetamine. Based on Patlan's repeated admission that he possessed the controlled substances, the court appropriately found by a preponderance of the evidence that he had violated the terms of his supervised release. *Raney*, 797 F.3d at 463. As the court informed Patlan, possession of a controlled substance mandated revocation of his supervised release. *See* 18 U.S.C. § 3583(g)(1). Because Patlan's possession of methamphetamine is a felony punishable by a term of imprisonment exceeding one year under both Illinois law, 720 ILCS 646/60(b)(1), and federal law, 21 U.S.C. § 844(a), the court properly categorized his violation as Grade B. Specifically, possession of a controlled substance is punishable by up to two years in prison for defendants like Patlan with prior controlled substance convictions. *See* 21 U.S.C. § 844(a), and *Trotter*, 270 F.3d at 1154–55 (holding that courts may consider a defendant's prior drug conviction in determining whether an offense is punishable by a term of imprisonment exceeding one year under section 7B1.1(a)(2)). And Illinois law treats possession of even small amounts of methamphetamine as a Class 3 felony. 720 ILCS 646/60(b)(1). The court therefore correctly calculated the guidelines range when it concluded that Patlan's conduct constituted a Grade B

violation. *United States v. Shockey*, 941 F.3d 282, 283–84 (7th Cir. 2019).

Although on appeal Patlan attempts to frame his admissions as being limited to *use* of controlled substances, the record simply does not bear that out. His repeated admissions that he *possessed* controlled substances are clear on the face of the record. We add for the sake of completeness that if Patlan had not conceded that he was guilty of possession, the court would have had discretion to treat his positive drug test as use only and not possession. *Trotter*, 270 F.3d at 1153. But he presented no facts to the court supporting that inference. That is, unlike a defendant who may have tested positive for marijuana simply because he was in close proximity to heavy smokers of that substance, Patlan does not claim that his ingestion of controlled substances was accidental or inadvertent or in any way not in his control. In his case, the more natural inference was that he possessed the drugs before using them, in the same way that a "person possessed the hamburger before wolfing it down." *Trotter*, 270 F.3d at 1153.

Because of Patlan's admission of possession, the district court properly understood Patlan's "policy" argument to address discretion as a sentencing matter, not discretion whether to infer a lesser Grade violation. The court fully acknowledged its discretion to sentence a Grade B violation as if it were a Grade C violation. The court simply declined to do so, finding the Grade B guidelines range to be more appropriate. There was no error in that conclusion and the court's within-guidelines sentence was reasonable.

We turn to Patlan's claim that the court erred in imposing a term of home confinement as a condition of supervised release and that the court further erred by failing to support that condition with justifications. The government contends that Patlan waived any objections to the conditions of supervised release, barring appellate review of this claim. In general, we review preserved challenges to the conditions of supervised release for abuse of discretion. *United States v. Paul*, 542 F.3d 596, 599 (7th Cir. 2008). But when a defendant does not object to the conditions of confinement, we must decide whether the defendant has forfeited or waived any objections. *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019).

"Waiver occurs when a party intentionally relinquishes a known right and forfeiture arises when a party inadvertently fails to raise an argument in the district court." *Flores*, 929 F.3d at 447. Patlan insists that the failure to object to the home confinement conditions was inadvertent. Counsel asserts that she saw the references to home confinement in the court's Conditions of Supervised Release, discussed them with Patlan prior to the hearing, believed them to have been included in error because neither party requested home confinement, and fully intended to raise the issue with the district court at the hearing. For his part, Patlan initialed those conditions and signed the document as the court had requested, and also waived the reading of the conditions of confinement at the hearing. Counsel explains on appeal that she simply forgot to raise the issue with the district court at the hearing. Counsel concedes that issues regarding the quality of representation are usually better addressed on collateral attack, where a factual record may be developed. *See United States v. Rucker*, 766 F.3d

638, 647 (7th Cir. 2014) (a defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose as the record is unlikely to lend sufficient support to such a claim, and by raising it on direct appeal, the defendant will be foreclosed from pursuing the same claim on collateral review). In this instance, counsel's claim that she fully intended to object to the term of home confinement and simply forgot to do so is not supported by anything in the direct appeal record. We must decide whether the claim was forfeited or waived on the basis of the record as it exists in the district court.

In this case, we find that Patlan waived any challenges to the conditions of confinement.

> When a defendant does not address supervised release conditions in the district court, this court will assess whether she waived those challenges. We will find waiver, as we do here, when the defendant has notice of the proposed conditions, a meaningful opportunity to object, and she asserts (through counsel or directly) that she does not object to the proposed conditions, waives reading of those conditions and their justifications, challenges certain conditions but not the one(s) challenged on appeal, or otherwise evidences an intentional or strategic decision not to object.

*Flores*, 929 F.3d at 450. Patlan meets every one of those factors.

The Probation Office's Violation Memorandum advised Patlan of the conditions that Office was proposing to the court. The court then issued its own pre-hearing Conditions of

Supervised Release, adopting the conditions proposed by the Probation Office with a modification to one of those conditions, and adding two of its own conditions related to home confinement. At the hearing, the court referenced the Conditions of Supervised Release that it had issued prior to the hearing and then made one small, additional change to one of the conditions. Patlan and his lawyer affirmatively indicated that they had reviewed the conditions, that Patlan had initialed them and signed the document, and they did not have any objections. The court then warned Patlan that a failure to object at the hearing might result in a waiver to any objections on appeal. Patlan indicated he had no objections and confirmed that he waived an oral reading of the conditions and justifications. After the court imposed the sentence, including the mandatory and discretionary conditions that the court had previously mentioned, the court gave Patlan and his attorney yet another opportunity to object, and both declined. On this record, we must conclude that: (1) Patlan had notice of the conditions; (2) he had a meaningful opportunity to object to them; (3) both he and his lawyer affirmatively indicated that they did not object to any of the conditions; and (4) he waived the reading of those conditions and their justifications. Although he did not challenge any of the conditions, he did object to being sentenced for a Grade B violation, and so he challenged part of the sentence but not the part to which he now objects, which tends to show that the failure to object was strategic, the final factor we delineated in *Flores*. 929 F.3d at 450. Neither Patlan nor his attorney gave the district court any reason to believe that this was anything other than an intentional or strategic decision not to object.

We therefore conclude that Patlan waived any objections to the conditions of supervised release, including any lack of justifications for the home confinement conditions. Waiver extinguishes any claim of error, precluding appellate review. *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Picardi*, 950 F.3d 469, 473–74 (7th Cir. 2020); *United States v. Aslan*, 644 F.3d 526, 537 (7th Cir. 2011). Finally, we note that even defendants who waive challenges to supervision conditions on direct appeal may petition the court for a modification of those conditions. 18 U.S.C. § 3583(e)(2); *Flores*, 929 F.3d at 451. If Patlan finds the term of home confinement too onerous or if circumstances change during imprisonment or after release, Patlan may seek a modification of the conditions before the district court.

AFFIRMED.