In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 23-1968

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DONALD D. REYNOLDS,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:22-cr-0022 — **Damon R. Leichty**, *Judge.*

———————————

ARGUED MARCH 28, 2024 — DECIDED AUGUST 6, 2024

———————————

Before BRENNAN, SCUDDER, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* After a lengthy prison term, Donald
Reynolds began a 60-month term of supervised release in
2020. During his supervision, Reynolds violated the terms of
his release by testing positive for methamphetamine. The
United States Probation Office attempted twice to help Reyn-
olds access drug treatment services rather than seeking revo-
cation. But these efforts were unsuccessful, and the Probation
Office asked the district court to revoke Reynolds's

supervised release. At the revocation hearing, Reynolds admitted to violating his release conditions, and the district court revoked his supervised release, sentencing him to 21 months of custody. Reynolds now appeals the revocation and argues that the district court erred because it failed to recognize its discretion to consider substance abuse treatment as an alternative to revocation and incarceration. We affirm.

## I.    Background

In the early 2000s, Donald Reynolds was sentenced to 248 months in custody followed by 60 months of supervised release. While on supervised release, Reynolds tested positive for methamphetamine. At that time, the Probation Office responded by referring Reynolds to a recovery center. Some months later, Reynolds tested positive for methamphetamine again, and his substance abuse treatment provider recommended an intensive outpatient program, which the Probation Office endorsed. Reynolds, however, ignored this recommendation and failed to participate in a treatment program as he was required to do.

Given this, the Probation Office petitioned to revoke Reynolds's supervision in December 2022. After an initial hearing, a magistrate judge required Reynolds to participate in an inpatient drug treatment program. While at the treatment center, Reynolds struggled to obtain his mental health medications and attempted suicide. He appeared before the magistrate judge a second time, and the judge again ordered Reynolds to enter a qualified inpatient facility. Reynolds complied, but after a few days at the facility, he again encountered difficulties obtaining his psychiatric medication and left his substance abuse treatment program without permission. He was arrested the next day.

At his final revocation hearing, Reynolds stipulated to violating his conditions of release by twice testing positive for methamphetamine and by signing himself out of the treatment facility without authorization. In its sentencing recommendation, the Probation Office noted that Chapter 7 of the Guidelines (which addresses probation and supervised release violations) advised revocation and a sentencing range of 21 to 27 months of imprisonment and a five-year term of supervised release, less the imprisonment term. It also explained that, for certain drug violations, § 3583(g) mandated revocation and incarceration, but § 3583(d) required the court to consider whether the availability of substance abuse treatment programs and Reynolds's prior participation in such programs warranted an exception to § 3583(g). The report concluded by recommending revocation and 24 months of incarceration with no supervision to follow.

The government argued for revocation and agreed with the Probation Office's recommendation of 24 months of imprisonment. In support, it pointed to Reynolds's continued flouting of the law and repeated refusal to comply with his treatment obligations. In response, Reynolds's counsel acknowledged the violations but explained that Reynolds's mental health challenges contributed to his noncompliance and highlighted his efforts to overcome his drug addiction.

After entertaining the parties' initial arguments, the district court stated to Reynolds, "the Court does find that there has been a violation of your supervised release terms … and, accordingly, will revoke your supervised release." It continued that it wanted to "talk about sentencing options" and proceeded to discuss the Guidelines sentencing range, informing Reynolds that his possession of methamphetamine was a

"Grade B Violation" resulting in a sentencing range of 21 to 27 months of custody. During this exposition, the district court also remarked: "Revocation is mandatory -- of course, I've already done that -- because you possessed a controlled substance."

The parties then presented their sentencing arguments. The defense focused on Reynolds's recently completed 248-month period of incarceration, his ongoing mental health struggles and challenges in obtaining medication, and recent family tragedies. Moreover, according to defense counsel, the prior treatment facility believed that Reynolds's resistance to treatment was caused by his inability to obtain his psychiatric medication and that "they would be more than happy to take him back." The government, on the other hand, argued that Reynolds's repeated violations demonstrated that he was unamenable to supervision or additional treatment and, therefore, should be incarcerated.

The parties further debated this last point. But, in the end, the district court agreed with the government and imposed a 21-month term of imprisonment with no supervised release.

## II.   Standard of Review

We typically review a district court's revocation of supervised release for abuse of discretion and its factual findings supporting its decision for clear error. *United States v. Patlan*, 31 F.4th 552, 556 (7th Cir. 2022) (citing *United States v. Raney*, 797 F.3d 454, 463 (7th Cir. 2015)). The government, however, argues that Reynolds failed to raise below the argument he raises now, so we should review for plain error. But this argument is precluded by our decision in *United States v. Wood*, 31 F.4th 593 (7th Cir. 2022).

As we noted in *Wood*, "Rule 51(a) states in no uncertain terms: '[e]xceptions to rulings or orders of the court are unnecessary' to preserve a basis for appeal. Fed. R. Crim. P. 51(a)." *Id.* at 597. When the "grounds for appeal existed prior to and separate from the district court's ultimate ruling," a party must raise the claim of error in the district court to avoid waiving it on appeal. *Id.* at 598. But when the error is "created by the district court's ruling itself," a party does not waive or forfeit a claim of error by failing to object. *Id.* at 598–99.

Here, Reynolds contends that the district court erred when it decided to revoke his supervised release because it thought that revocation and incarceration were mandatory under § 3583(g). It is the district court's *ruling* on revocation that gives Reynolds the basis for his appeal, and Reynolds had no obligation to raise his objection below to preserve it. Accordingly, we review the district court's revocation determination for abuse of discretion.

## III.  Analysis

### A.  Revocation of Supervised Release

In deciding whether to modify or revoke a term of supervised release, a district court must consider the factors in 18 U.S.C. § 3583(e).[1] *See United States v. McGee*, 60 F.3d 1266, 1268

---

[1] Section 3583(e), entitled "Modification of Conditions or Revocation," authorizes the district court to, among other things, terminate a term of supervised release, modify the length of the term or any conditions, or revoke supervised release and impose an appropriate sentence "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *Id.* Section 3583(e) and Chapter 7 of the Guidelines Manual "reflect the unique purpose of revocation sentences. The point is not to punish a defendant's violation as if it were a new federal crime, but rather to sanction the defendant's breach of trust –

(7th Cir. 1995). And, as a general matter, district courts possess broad discretion to decide when revocation is appropriate and the corresponding sentence if revocation is ordered. *See id.* But revocation and incarceration are mandatory in certain circumstances. *See* 18 U.S.C. § 3583(g). A court "shall revoke the term of supervised release and require the defendant to serve a term of imprisonment" when, among other things, the defendant "possesses a controlled substance," "refuses to comply with drug testing imposed as a condition of supervised release," or "as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year." *Id.*

We remind district courts to take care, however. Section 3583(d) contains an exception to § 3583(g)'s revocation and incarceration requirement. In those instances when a defendant is subject to § 3583(g) due to a failed drug test, § 3583(d) directs that "[t]he court *shall* consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an *exception* … from the rule of section 3583(g)." 18 U.S.C. § 3583(d) (emphasis added). In essence, § 3583(d) restores discretion to the district judge in determining whether revocation and incarceration are warranted when a defendant violates supervised release due to a failed drug test.

Here, Reynolds argues that the district court abused its discretion because it erroneously believed, contrary to § 3583(d), that § 3583(g) required revocation and

---

that is, his or her failure to comply with court-ordered conditions arising from the original conviction." *United States v. Dawson*, 980 F.3d 1156, 1162 (2020) (internal citation omitted).

incarceration based on his failed drug tests. In response, the government urges us to consider the record as a whole. Viewed that way, the government says, the record demonstrates that the district court implicitly recognized its discretion to order treatment instead of revocation and incarceration. And to support this argument, the government points to numerous discussions between the parties and the court about Reynolds's amenability to treatment, including a lengthy exchange between defense counsel and the court somewhat later in the proceeding. Our reading of the record, however, leaves much doubt.

Three things undermine the government's portrayal of events. First, the district court stated in its own words that "[r]evocation is mandatory."

Second, the court decided to revoke Reynolds's supervised release shortly after the parties' initial arguments, telling Reynolds that "the Court does find that there has been a violation of your supervised release terms [given the admissions] and, accordingly, will revoke your supervised release today." It then immediately turned to sentencing, stating, "Let's talk about sentencing options, and we'll get to argument on the sentencing, as well."[2]

---

[2] Reynolds also suggests that the district court erred by believing that revocation was mandatory even though he had tested positive for controlled substances only twice in one year. But this argument is unavailing. The district court's reasoning shows that it made the permissible inference that Reynolds's positive drug tests evidenced drug possession. *See Patlan*, 31 F.4th at 557 (noting that an "inference of possession is permissible but not required, depending on the circumstances" when an individual tested positive for use of that drug). And we review such findings of fact for clear error. *Id.* at 556.

Third, later in the proceedings, defense counsel again urged the court to "accommodate … [Reynolds's] needs for treatment, real treatment, instead of being warehoused for another couple of years." In response, the court asked, "how would you propose to structure that?" And defense counsel suggested that the court take the revocation petition under advisement, allow Reynolds to attend the treatment facility, and set a status hearing for a later date. The court's question and counsel's response could indicate that both harbored the belief that the only way for the court to resolve the government's petition was to revoke Reynolds's supervised release and impose a sentence of incarceration.[3]

While the record suggests to us that the court believed it had no choice but to grant the government's petition for revocation and incarceration, we need not decide whether the court abused its discretion in doing so, because, even if the court did err, the record makes it abundantly clear that any error was harmless.

### B.  Harmless Error

It is well-established that, when reviewing a sentence, we may deem an error harmless and affirm if we are convinced the sentence would have been the same absent the alleged error. *See United States v. Abbas*, 560 F.3d 660, 666–67 (7th Cir. 2009). We see no reason why harmless error rules applicable to sentencings would apply differently in the context of revocation determinations and post-revocation sentences. *See*

---

[3] If the district court had thought it had the discretion not to revoke, it could have denied the petition without prejudice and extended supervision with additional terms or modified the conditions of the existing supervised release. *See* 18 U.S.C. § 3583(e).

*generally United States v. Jackson*, 549 F.3d 1115 (7th Cir. 2008) (applying harmless error to sentence for violation of supervised release). This is particularly true given that § 3583(e) requires the court to weigh many of the same sentencing factors set forth in § 3553(a) when considering revocation.

There is little doubt on this record that, even if the district court had realized its authority under § 3583(d) to order additional drug treatment in lieu of revocation, it would not have done so. When applying the applicable § 3553(a) factors, the court explained that Reynolds had refused multiple opportunities to benefit from substance abuse treatment rather than face further incarceration. The court continued:

> Aside from the fact that you returned to methamphetamine in 2022, the largest concern for me, Mr. Reynolds, is that, even with the aid of Probation, even with the aid of the Court's order by Magistrate Judge Gotsch to see to treatment … you were not in compliance even as late as last month, and, thus, I see a real need for not just public protection, but deterrence. And if those alternatives to imprisonment won't work, they won't stick, then the unfortunate reality is, then, that imprisonment is the mechanism by which the Court needs to secure deterrence and public protection and to promote those goals.

Based on Reynolds's history, the district court clearly believed that any further attempts to convince him to participate in drug treatment would be futile. Thus, even if the district court had realized that revocation was optional under § 3583(d), it would not have agreed to simply require more drug treatment in lieu of revocation. Indeed, the court could

have chosen that option by adopting defense counsel's proposal to continue the petition and give Reynolds another chance at treatment, but the court did not do so. Thus, to the extent that the district court did not realize that it could have ordered further treatment rather than revocation, that error was harmless.

## IV.  Conclusion

For these reasons, we therefore AFFIRM the judgment of the district court.